UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| RICK MCTAGGART, | ) | |
| | ) | |
| Plaintiff, | ) | 1:19-CV-00088-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| CATHOLIC HEALTH | ) | |
| INITIATIVES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the parties' motions *in limine* [Docs. 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, and 56]. The motions are ripe for resolution.

**1.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Rick McTaggart ("McTaggart") alleges discrimination and retaliatory discharge in violation of the Family Medical Leave Act ("FMLA") against his former employers, Catholic Health Initiatives, Inc. and Memorial Health Care System, Inc ("Defendants") [Doc. 18]. McTaggart worked for Defendants as a respiratory therapist at Memorial Hospital in Chattanooga, Tennessee ("Memorial") from May 6, 1990 until his termination on April 30, 2018 [Doc. 18, ¶¶ 6, 12]. In August 2016, Tena Green ("Green") became McTaggart's manager at Memorial and began requiring him and other lab employees to perform clinical care duties on the hospital floor when they were not actively performing lab tests [Doc. 40, ¶¶ 14, 15]. When McTaggart complained, Green told him to "suck it up, buttercup." [Doc. 40, ¶ 17]. McTaggart requested a transfer to Memorial's North Park location where he would only have to perform patient rounds with no

duties in the lab [Doc. 40, ¶ 27]. At the North Park location, McTaggart seldom encountered Green, though she remained his department manager [Doc. 40, ¶¶ 14, 30].

On September 30, 2017, while working at North Park, McTaggart requested and received "intermittent FMLA" leave for arthritis "flare-ups." [Doc. 40, ¶ 32]. Defendants approved this request through March 31, 2018 [Doc. 40, ¶ 36]. On April 9, 2018, McTaggart was scheduled to work but called Defendants that morning to report that he was not coming in because his back and hip were bothering him, and he was "going to try [to] use FMLA." [Doc. 40, ¶ 51]. McTaggart was also scheduled to work the next day, April 10th, but called in again to report that his back and hip were bothering him, and he was going to use FMLA leave [Doc. 40, ¶ 52]. Upon his return to work, McTaggart edited his attendance record to reflect that his absences should be classified as "FMLA" leave [Doc. 40, ¶ 54].

On those same dates, another Memorial staff therapist saw McTaggart in attendance at a conference held by the Tennessee Society for Respiratory Care ("TSRC") in Gatlinburg, Tennessee, and advised Green that she had seen him there [Doc. 40, ¶ 55]. Green reported McTaggart's attendance at the conference to Amanda Coots ("Coots"), who worked in Defendants' human resources department [Doc. 40, ¶ 57]. Coots advised Green that McTaggart's use of FMLA to attend a conference was a falsification of records and grounds for termination [Doc. 40, ¶¶ 57]. Coots and Green then met with Joe Romeo ("Romeo"), Director of Nursing, who agreed that McTaggart's conduct warranted termination [Doc. 40, ¶ 62]. On April 30, 2018, Coots, Green, and Romeo met with McTaggart to confirm that he had indeed attended the conference on the dates he requested FMLA leave [Doc. 40, ¶¶ 63-65]. At this meeting, McTaggart did not attempt to explain why his absence was covered under the FMLA, and Coots, Green and Romeo did not inquire whether McTaggart had a medical reason for using FMLA, nor whether he had observed medical restrictions from his doctor while at the conference [Doc. 40, ¶¶

63-65; Doc. 40, "Plaintiff's Statement of Additional Disputed Material Facts" ¶¶ 31, 34]. At the conclusion of the meeting, Defendants terminated McTaggart's employment for falsifying personnel records [Doc. 40, ¶ 66].

McTaggart and another Memorial employee named Latisha Lea ("Lea") initially filed this action against Defendants in state court alleging various claims of discrimination [Doc. 1-1, pgs. 6-17], and Defendants timely removed to federal court [Doc. 1]. Following removal, McTaggart and Lea filed an amended complaint before this Court [Doc. 18]. In that complaint, McTaggart alleged retaliation and discrimination in violation of the Family Medical Leave Act ("FMLA") and retaliation, discrimination, wrongful discharge, failure to make reasonable accommodations, and hostile work environment in violation of the Americans with Disabilities Act ("ADA") and related state disability laws [Doc. 18]. On September 15, 2020, the parties stipulated to the dismissal of Lea's claims with prejudice [Doc. 43]. Defendants also filed a motion for summary judgment seeking dismissal of all of McTaggart's claims [Doc. 35]. In its memorandum opinion and order on the motion for summary judgment [Doc. 70], the Court dismissed with prejudice all of McTaggart's claims except his claims of discrimination and retaliatory discharge in violation of the FMLA [Doc. 70, pg. 17; Doc. 18, ¶¶ 50-55]. The jury trial, originally set for March 23, 2021, was subsequently cancelled due to scheduling conflicts arising from the COVID-19 pandemic and reset for January 18, 2022 [Docs. 69, 72].

II. ANALYSIS

A. MCTAGGART'S MOTION *IN LIMINE* TO PRECLUDE ANY MENTION OF LATISHA LEA [DOC. 45]

McTaggart moves to preclude any mention of Latisha Lea, who was a co-plaintiff in the initial complaint but whose claims were later resolved by agreement [Docs. 18, 43]. McTaggart argues that any information about Ms. Lea's status as a plaintiff is irrelevant and would

3

"necessarily implicate evidence of compromise offers and negotiations" in violation of Rule 408 of the Federal Rules of Evidence. Defendants did not file a response.

The Court agrees that any information of settlement offers or negotiations between Defendants and Ms. Lea is prohibited by Fed. R. Evid. 408 unless it qualifies as an exception under that rule, none of which apply in this case. *See* Fed. R. Evid. 408(b). The Court notes that Defendants have also moved to exclude reference to Lea's settlement agreement [*See* Doc. 49, discussed below]. Since both parties agree that Ms. Lea's previous involvement and settlement in this case is not relevant to McTaggart's remaining claims, the motion *in limine* [Doc. 45] is GRANTED. Neither party shall offer proof of any negotiations or settlement offers between Defendants and Ms. Lea, nor mention Ms. Lea's prior involvement in this case.

**B.      MCTAGGART'S MOTION *IN LIMINE* REGARDING CONDUCT WHILE ON FMLA LEAVE [DOC. 46]**

McTaggart seeks to preclude "any argument or assertion that misstates or mischaracterizes the law on the issue of employee conduct while on FMLA leave [or] implies that employees on FMLA leave are not permitted to engage in any activities during their leave." [Doc. 46, pg. 1]. McTaggart states he was "questioned extensively in his deposition about the things he did" while on FMLA leave and argues that if the purpose of these questions is to show that he "committed the crime of enjoying himself" while on FMLA leave, this would insinuate that FMLA requires all employees to "sit at home on their couches" for the duration of their leave, which would be a "mischaracterization" of the law [Doc. 46, pg. 2]. Defendants did not file a response to this motion.

McTaggart relies on a Massachusetts case, *DaPrato v. Massachusetts Water Resources Authority*, 123 N.E. 3d 737 (Mass. 2019), to argue that evidence of his conduct while on FMLA leave should be excluded. In *DaPrato*, the court reviewed a charge instructing the jury not to consider as a negative factor the location and manner in which the plaintiff employee took his

4

Case 1:19-cv-00088-DCLC-SKL   Document 73   Filed 08/02/21   Page 4 of 18   PageID #: 860

FMLA leave. *DaPrato*, 123 N.E. 3d at 747. The defendant employer argued it was prejudiced because the instruction prohibited the jury from considering that DaPrato was "on vacation" during his FMLA leave. *Id*. The court upheld the jury instruction as consistent with its precedent on conduct during FMLA leave, reasoning that "an employer may not treat the mere fact that an employee went on vacation while on FMLA leave, standing on its own, as grounds for an adverse employment action." *Id*. The court further explained that an employer may consider an employee's conduct that is "inconsistent with his or her claimed reasons for medical leave" as long as "the employer has such information at the time the employer is evaluating whether leave has been properly or improperly used." *Id*. In upholding the jury instruction, the *DaPrato* court noted the instruction was "curative," intended to "minimize the substantial risk that the jury would be swayed by [the employer's] attempts [to] play on the jury's possible resentment" that DePrato had vacationed while on FMLA leave. *Id*. at 387.

Here, McTaggart is not objecting to a jury instruction, but instead asks the court to preclude all evidence and argument regarding his conduct during FMLA leave before trial has even begun. Information about McTaggart's conduct while on leave, as well as what Defendants knew about this conduct, is relevant to his retaliation claim because it is probative on whether Defendants' stated reasons for terminating McTaggart were legitimate or merely pretextual. For these reasons, McTaggart's motion *in limine* [Doc. 46] to exclude evidence regarding his conduct while on FMLA leave is DENIED.

C. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE ARGUMENT OR EVIDENCE REGARDING THE SIZE OR SCOPE OF DEFENDANTS' OPERATIONS OR DEFENDANTS' PROFITS OR REVENUES [DOC. 47].**

Defendants move, pursuant to Fed. R. Evid. 402 and 403, to preclude McTaggart from arguing or introducing evidence of the size or scope of Defendants' operations or the amounts of their profits or revenues. McTaggart did not file a response. Defendants argue that such evidence

5

is irrelevant because there is no contested issue regarding FMLA employer size requirements and no one from any location other than Defendants' "downtown and North Park locations" was involved in any employment action involving McTaggart [Doc. 47, pg. 2]. Defendants also argue such evidence would be unfairly prejudicial because it would garner sympathy for McTaggart and encourage the jury to "issue a verdict against Defendants based on financial considerations rather than the merits of the case." [*Id.*].

Defendants correctly note that this Court has granted motions *in limine* barring this type of evidence as prejudicial. *See, e.g., Lohr v. Atmos Energy Corp.*, 2009 WL 10710376, at *3 (E.D. Tenn. Feb. 23, 2005); *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 2005 WL 8162569, at *11 (E.D. Tenn. Feb. 23, 2005). Following this precedent, McTaggart should not seek to introduce evidence of Defendants' wealth or size of operations for its own sake. However, McTaggart shall not be precluded from mentioning Defendants' downtown and North Shore locations, or other pertinent characteristics of Defendants' operations at these locations, if such evidence is material to his claims.

For the reasons stated herein, Defendants' motion *in limine* [Doc. 47] is GRANTED IN PART and DENIED IN PART.

D. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING EMOTIONAL DISTRESS DAMAGES ABOVE "GARDEN VARIETY" EMOTIONAL DISTRESS [DOC. 48].**

Pursuant to Fed. R. Evid. 602, 701, and 702, Defendants move to preclude McTaggart from arguing or introducing evidence of "purported emotional distress damages beyond 'garden variety' emotional distress." [Doc. 48, pg. 1]. Defendants argue that anything more than "the usual and customary" emotional distress related to losing one's job would require expert testimony from a medical professional, and McTaggart has disclosed no such expert [Doc. 48, pg. 2]. Defendants state that McTaggart's own testimony about his emotional distress is "conclusory" and "closely

6

tracks the definition of garden variety distress." [*Id.*]. Particularly, Defendants seek to exclude McTaggart's statements that he "believes the termination contributed to an increase in his medication dosage . . . ." [Doc. 48, pg. 3]. Defendants argue that McTaggart "is not a therapist, psychologist, psychiatrist" or any other mental health professional and has not designated himself or anyone else as an expert witness in this area [*Id.*] Defendants ask the Court to limit McTaggart's emotional distress claim to "garden variety distress" which would preclude him from testifying to any "perceived connection between his termination and his prescription dosage." [*Id.*]. McTaggart did not file a response to this motion.

In the context of an emotional distress claim, "the definition of [garden variety] is, at best, nebulous." *Butler v. Rue 21, Inc.,* No. 1:11-CV-9, 2011 WL 1484151, at *2 (E.D. Tenn. Apr. 19, 2011). One district court defines "garden variety" emotional distress as "the usual and customary emotional distress that results from a workplace termination, such as anger, sadness, and humiliation." *Cottrell v. Costco Wholesale Corp.*, 2012 WL 3779143, at *2 (D. Minn. Aug. 31, 2012). In "garden variety" emotional distress claims, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 292 (2d Cir. 2010).

McTaggart has disclosed no medical expert to opine on any mental health diagnosis and causation, nor has he alleged any extraordinary mental condition flowing from his termination that would require medical examination. For this reason, the Court agrees that any damages flowing from McTaggart's emotional distress are of the "garden variety" type. Without any alleged extraordinary medical condition, any medical proof would likely be inadmissible regardless. *See Butler v. Rue 21, Inc.*, 2011 WL 1484151 at *3 (" . . . a plaintiff who merely claims she has suffered

the sort of damages that would ordinarily flow from the alleged wrong has not placed her actual mental condition at issue, and medical discovery is therefore unlikely to lead to admissible evidence."). For these reasons, Defendants' motion *in limine* to preclude evidence or argument regarding emotional distress damages above "garden variety" emotional distress [Doc. 48] is GRANTED. Specifically, McTaggart may testify regarding his own perceptions of emotional distress related to his employment and termination but is barred from testifying that his termination bears any connection to his medical prescription dosage for any mental health diagnosis, including depression and anxiety.

E.  **DEFENDANTS' MOTION *IN LIMINE* REGARDING REFERENCES TO FORMER CLAIMS OF LATISHA LEA [DOC. 49].**

Defendants move, pursuant to Fed. R. Evid. 402, 403, and 408, to preclude any reference to the claims of Latisha Lea, who was originally a plaintiff in this action, but who has since reached a settlement agreement with Defendants resulting in dismissal of her claims [Doc. 49, pgs. 1-2]. Defendants argue that Lea's claims are not relevant to McTaggart's remaining claims because Lea was terminated for "altogether different reasons." [Doc. 49, pg. 2]. Defendants argue that "whatever slight relevance" Lea's claims may provide are outweighed by unfair prejudice, confusion, and waste of trial time, and that knowledge of the settlement with Lea might lead the jury to conclude Defendants had admitted to wrongdoing, and Defendants might be "forced to disclose" the terms of the settlement, which would destroy their confidentiality interests [Doc. 49, pg. 3]. Defendants also argue that testimony about Lea's claims would require Defendants to present "more than 10 exhibits" to prove that Lea's termination was appropriate, and this would result in a wasteful "mini-trial" of complicated facts related to Lea's termination that would be "at best marginally relevant." [Doc. 49, pg. 4]. McTaggart did not file a response to this motion,

8

though the Court notes that McTaggart is likely in agreement because he also moved to preclude any mention of Lea at trial [*See* Doc. 45].

The Court agrees that allowing evidence of Lea's claim or termination would waste time and potentially confuse the jury, and the resulting prejudice substantially outweighs any benefits such testimony would provide the jury in reaching a verdict. For these reasons, Defendants' motion *in limine* to exclude references to Lea's claims [Doc. 49] is GRANTED. McTaggart shall not present evidence or argument regarding Lea's termination or claims against Defendants.

F. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE "ME TOO" TESTIMONY REGARDING ALLEGED DISCRIMINATION OR RETALIATION AGAINST INDIVIDUALS OTHER THAN MCTAGGART [DOC. 50].**

Defendants move, pursuant to Fed. R. Evid. 402, 403, 602 and 802, to preclude McTaggart from arguing or introducing testimony or evidence that "any employee other than McTaggart was discriminated or retaliated against at Memorial." [Doc. 50, pg. 1]. Defendants seek to exclude testimony by employees listed in McTaggart's complaint whom Green allegedly discriminated against: "Diana Phillips, Latisha Lea,[1] Katrina Stonecipher, Chris Sims, Lisa Mott, and Sharon Cabiness." [Doc. 50, pgs. 1-2]. Defendants argue any testimony that Green discriminated against these employees is "impermissible 'me too' evidence," because the other employees were not "similarly situated in relevant respects to [McTaggart]." [Doc. 50, pg. 3]. Defendants assert such testimony would encourage the jury to issue a verdict against Defendants for improper reasons like "punishing Memorial" for its actions toward non-parties [Doc. 50, pgs. 4-5]. Defendants also argue that "the foundation of personal knowledge required by Fed. R. Evid. 602 is absent" because McTaggart has no personal knowledge of any discrimination toward these other employees [Doc.

---

[1] Testimony by Latisha Lea shall be excluded pursuant to the rulings on motions *in limine* [Docs. 45 and 49].

50, pg. 5]. Defendants state that even if such evidence were admissible, it is hearsay and cannot come into evidence through McTaggart's testimony [*Id.*]

Finally, Defendants argue the introduction of this evidence would violate Rule 37 of the Federal Rules of Civil Procedure because McTaggart did not properly disclose these third-party witnesses [Doc. 50, pg. 6]. According to Defendants, two of the named witnesses (Mott and Phillips) were never disclosed at all, and the remaining three (Sims, Stonecipher, and Cabiness) were disclosed, but only as to the subject matter of "McTaggart's employment," and not their own [Doc. 50, pg. 6].

McTaggart responds in opposition, arguing that evidence of Green's discrimination against other employees "is relevant to show Defendants' animus and does not present a danger of unfair prejudice." [Doc. 65, pg. 1]. McTaggart argues that while none of the other employees are a "precise match" to his situation, they "share enough similarities to warrant admission into evidence." [Doc. 65, pg. 2]. McTaggart states that Cabiness's testimony is particularly relevant because McTaggart overheard Green threaten to fire her for using her FMLA leave, the very same reason McTaggart alleges he was fired [Doc. 65, pg. 3]. McTaggart states he has personal knowledge "at least with regard to [Cabiness]," because he "personally overheard" Green threaten to fire her [Doc. 65, pg. 4]. McTaggart argues his testimony about the exchange between Cabiness and Green is not hearsay because Green's words to Cabiness are the statement of a party opponent, and therefore admissible under Fed. R. Evid. 801(d)(2) [*Id.*].

As to Defendants' Rule 37 disclosure argument, McTaggart counters that he properly disclosed the witnesses and the subject matter of their anticipated testimony [Doc. 65, pgs. 4-5]. Regarding the two witnesses not named in his initial disclosures, McTaggart explains that Lisa Mott was disclosed under another last name, Lisa Ford, and that Diana Phillips was not listed because she is deceased [Doc. 65, pgs. 4-5]. With regard to Sims, Stonecipher, and Cabiness,

10

McTaggart asserts that he sufficiently described the subject matter of their potential testimony as, "Work environment/Tena Green" in his initial disclosures [Doc. 65, pg. 5].

"Me too" discrimination evidence "is fact based and depends upon many factors . . . ." *Hosse v. Sumner Cty. Bd. of Educ.*, 776 F. App'x 902, 905 (6th Cir. 2019) (internal citation and quotation marks omitted). "The factors [include] whether the same actors were involved in each decision . . . temporal and geographical proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of discrimination." *Id*. (internal punctuation marks and citations omitted). "Me too" evidence is "neither *per se* admissible nor *per se* inadmissible." *Id*.

Because this type of evidence is fact-intensive, the proper time to determine its relevance is during trial, where a proper foundation must be laid before questioning any witness. Any objection as to relevance, hearsay, or lack of proper foundation or personal knowledge can be raised at trial.

Finally, McTaggart properly disclosed the names of each witness who would testify [Doc. 65, pgs. 4-5], and sufficiently described the subject matter of their potential testimony as, "Work environment/Tena Green" in his initial disclosures [Doc. 65, pg. 5]. While this is a closer call, the Court declines to exclude this testimony for a failure to more specifically describe the subject matter of the testimony.

For these reasons, Defendants' motion *in limine* [Doc. 50] to preclude "me too" testimony by individuals other than McTaggart is DENIED.

**G. DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OR ARGUMENT REGARDING MCTAGGART'S COMPLIANCE WITH MEDICAL RESTRICTIONS OR DEFENDANTS' INVESTIGATION REGARDING MEDICAL RESTRICTIONS [DOC. 51]**

Defendants move, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, to preclude McTaggart from arguing that his absences were "appropriate uses of FMLA leave because [he] purportedly complied with medical restrictions" from his physician, or that "Defendants should have investigated his compliance" with these medical restrictions [Doc. 51, pg. 1]. They also argue the Court should bar excerpts from the deposition of Ms. Amanda Coots ("Coots"), a Memorial "human resources employee," as inadmissible lay testimony on medical compliance because it "misstates the legal standards for appropriate use of FMLA leave." [*Id*.]. Defendants contend that McTaggart's compliance with medical restrictions has "no bearing on whether his absence was taken for an appropriate FMLA qualifying reason," and instead argue the relevant issue is "whether Memorial honestly believed that McTaggart was suffering from 'incapacity' or obtaining 'treatments'" when Memorial supervisors learned McTaggart was actually attending a conference for which he had registered three weeks before [Doc. 51, pg. 4]. Defendants state that the relevance of this evidence is outweighed by the risk of "confusing or misleading the jury as to what issues it must decide and what standards to apply." [Doc. 51, pg. 5].

McTaggart responds in opposition [Doc. 64], arguing that proof that he followed medical restrictions during his FMLA leave, as well as corresponding evidence that Defendants "conducted no investigation" into whether he comported with those restrictions, is relevant to show Defendants' "proffered reason for terminating him . . . has no basis in fact." [Doc. 64, pg. 2]. McTaggart also argues such evidence is relevant to show Defendants did not adhere to their own policy which required them to investigate McTaggart's compliance with FMLA rules [Doc. 64, pg. 3]. Finally, McTaggart argues Defendants claim they honestly believed he falsely reported FMLA, but "merely stating" they held this honest belief is not sufficient [Doc. 64, pg. 3].

Evidence of whether McTaggart complied with medical restrictions while on FMLA leave is relevant to whether Defendants had a legitimate reason for terminating him or whether their proffered reasons was mere pretext. The same is true for evidence pertaining to Defendants' investigation (or lack thereof) into McTaggart's medical compliance while on leave. Testimony from Ms. Coots, the human resources director, regarding her understanding of FMLA requirements is relevant to determine what Defendants believed was required of McTaggart while on leave, even if that belief was erroneous. Any misunderstanding of FMLA requirements can be clarified at trial and through instructions to the jury, if necessary. Finally, the Court has already ruled that evidence of McTaggart's conduct during FMLA is admissible. S*ee* discussion on motion *in limine* [Doc. 46]. It logically follows that the Court should allow evidence, properly presented, that McTaggart complied with medical restrictions during that time. For these reasons, Defendants' motion *in limine* [Doc. 51] to exclude testimony or argument regarding McTaggart's compliance with medical restrictions and Defendants' investigation of that compliance at the time of his termination is DENIED.

**H.    DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OR ARGUMENT REGARDING ALLEGED FAILURE TO PROVIDE REASONABLE ACCOMODATIONS OR CREATION OF A DISABILITY-BASED HOSTILE WORK ENVIRONMENT [DOC. 52].**

Defendants move to exclude argument or evidence related to McTaggart's hostile work environment claims under the Americans with Disabilities Act ("ADA") and the Tennessee Human Rights Act ("THRA") "on the grounds that no actions forming the basis for these claims were exhausted administratively or occurred within the relevant limitations periods." [Doc. 52, pg. 1].

13

! On March 30, 2021, the Court dismissed with prejudice McTaggart's ADA and THRA claims on summary judgment [Doc. 70]. Therefore, Defendants' motion *in limine* [Doc. 52] is DENIED AS MOOT.

I. **DEFENDANTS' MOTION *IN LIMINE* TO SEQUESTER WITNESSES [DOC. 53].**

Defendants move the Court to order all witnesses be excluded from hearing testimony of other witnesses pursuant to Fed. R. Evid. 615. The Court finds this motion well taken, and it is GRANTED. The parties are reminded to request the rule at the start of the trial and the Court will provide specific instructions to the witnesses.

J. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OR EVIDENCE OF "STRAY REMARKS" [DOC. 54].**

Defendants move to exclude, pursuant to Fed. R. Evid. 402 and 403, certain "stray remarks" allegedly made by McTaggart's former supervisor, Tena Green [Doc. 54]. Defendants seek to exclude three statements in particular that McTaggart claims "exhibited animus against employees with disabilities or who had used FMLA Leave." [Doc. 54, pg. 2]. The first statement is Green's alleged, "suck it up, Buttercup," comment to McTaggart when he asked her for different job duties [Doc. 54, pg. 2]. The second "statement" is a series of remarks allegedly made by Green to employee Diana Phillips, including the statements that "if you can't be here, you don't need to be here," that Phillips was "too old" and "not able to do her job," and asking Phillips, "why don't you retire?" [*Id.*]. The third statement is Green's alleged warning to employee Sharon Cabiness that "if [Cabiness] didn't stop calling in, using FMLA, that she would be fired." [*Id.*].

Defendants argue that even if Green made these comments, they are "stray remarks" that are not evidence of discriminatory intent and are therefore not admissible [Doc. 54, pg. 3]. Defendants rely on the four-factor test outlined in *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) to determine that each statement should be precluded as irrelevant [Doc. 54, pg. 3].

14

These factors are: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters*, 285 F.3d at 478.

McTaggart responds that the four-factor test in *Peters* does not apply to the present case because *Peters* involved age discrimination rather than retaliatory discharge for using FMLA [Doc. 63, pg. 2]. Even if *Peters* does apply, he argues that the Court must consider the factors and circumstances for each statement on a "case by case" basis, and the factors weigh in favor of inclusion [*Id.*]. McTaggart explains that each comment was made by the same individual, Tena Green, and that Green said these statements either to McTaggart or a "similarly situated employee," rendering each statement "highly probative" of Green's "explicit animus toward employees who use FMLA." [Doc. 63, pg. 3].

McTaggart is correct that the four-factor test in *Peters* was specifically set forth for "age discrimination cases" to analyze "statements allegedly showing an employer's age bias." *Peters*, 285 F.3d at 477. However, the factors have been more recently framed to encompass discrimination claims in general. *Worthy v. Michigan Bell Telephone Co.*, 472 F.App'x 342, 347 (6th Cir. 2012) ("To determine if statements are 'relevant' as direct evidence of discrimination or are merely 'stray remarks,' courts generally consider: (1) whether the remarks were made by the decisionmaker or by an agent uninvolved in the challenged decision; (2) whether the remarks were isolated or part of a pattern of biased comments; (3) whether the remarks were made close in time to the challenged decision; and (4) whether the remarks were ambiguous or clearly reflective of discriminatory bias.") (internal citations omitted).

First, all three remarks were made by the "decisionmaker" Ms. Green, who sought McTaggart's termination, so this factor weighs in favor of finding them relevant to McTaggart's claims. Second, evidence may show that the remarks were part of a pattern of biased comments against employees who use FMLA, which would support McTaggart's claim that Green "targeted" such employees. On the other hand, the proof may reveal Defendants showed no bias at all. Either way, the second factor weighs in favor of finding the "stray remarks" relevant. Third, at least some of the remarks, if not all, can be considered remote in time from McTaggart's termination, which weighs against their relevance to the present action. Fourth, it is impossible to know whether the statements are ambiguous or clearly reflective of bias without considering them in the context of the evidence as a whole. At least one of the statements purportedly involved an employee taking FMLA leave, thus the fourth factor weighs in favor of admitting the statements into evidence. Considering the factors together, it would be premature to declare the statements inadmissible under Fed. R. Evid. 402 or 403. For these reasons, Defendants' motion *in limine* [Doc. 54] is DENIED at this time.

K. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY MCTAGGART OR OTHERS OF SUBJECTIVE BELIEFS OR OPINIONS OF "TARGETING" OR DISCRIMINATION BY TENA GREEN [DOC. 55].**

Defendants move pursuant to Fed. R. Evid. 402, 403, and 602 to preclude McTaggart or any non-party witness from testifying as to any subjective belief that former Memorial employee Tena Green ("Green") "targeted" or discriminated against employees who had disabilities or used FMLA leave [Doc. 55, pg. 1]. Defendants point to McTaggart's deposition, in which he claims that Green targeted him and others with disabilities but admits he has no personal knowledge that Green targeted or discriminated against other Memorial employees [Doc. 55, pg. 2]. Defendants argue that "subjective testimony regarding another person's allegedly discriminatory motive is inadmissible." [Doc. 55, pg. 3]. Defendants argue that McTaggart bears the burden to prove he

16

Case 1:19-cv-00088-DCLC-SKL   Document 73   Filed 08/02/21   Page 16 of 18   PageID #: 872

was terminated because of his disability and use of FMLA leave, but that any proffered subjective belief that Green discriminated against disabled employees is "speculation and impermissible lay opinion." [Doc. 55, pg. 3]. Defendants ask the Court to prohibit McTaggart from "testifying, or eliciting testimony from others, regarding any alleged practice by Green to target or discriminate against employees with disabilities or who used FMLA leave." [Doc. 55, pg. 4].

McTaggart responds in opposition, stating that Fed. R. Evid. 701 "explicitly permits lay witnesses to testify in the form of an opinion so long as that opinion is sufficiently based on the witness's perceptions." [Doc. 62, pg. 1].

A lay witness's subjective belief or opinion without personal knowledge on any topic is inadmissible under Fed. R. Evid. 602. Lay witnesses will not be permitted to testify about Green's thoughts or motives. Witnesses may testify to their own personal, first-hand knowledge or experience of discrimination, assuming the proper foundation is laid. Subjective beliefs and opinions about any individual's unspoken motives and internal thoughts are prohibited. For these reasons, Defendants' motion [Doc. 55] is GRANTED in part and DENIED in part.

L. **DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY NOT BASED ON PERSONAL KNOWLEDGE [DOC. 56].**

Defendants move pursuant to Fed. R. Evid. 602 and 802 to preclude McTaggart from testifying regarding events of which he has no personal knowledge or presenting hearsay statements by third parties [Doc. 56, pg. 1]. Specifically, Defendants move to preclude (1) testimony that Green targeted McTaggart with the assistance of another employee, Jacqueline Potter ("Potter"), who purportedly shredded certain materials McTaggart needed to do his job, and (2) testimony that, after McTaggart transferred to a different location, Green "called two or three people" telling them to "keep an eye on him." [Doc. 56, pgs. 1-2]. Defendants state that McTaggart has no way of knowing whether Potter shredded the materials as he alleges, and his statements that

other employees were told to keep an eye on him are hearsay that fall under no exception [Doc. 56, pg. 2]. McTaggart did not file a response to this motion.

Testimony based solely on information "received from elsewhere" and not on personal knowledge is inadmissible hearsay unless it falls under a hearsay exception. *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir. 2007); Fed. R. Evid. 802. McTaggart testified that he was "informed" of Potter's actions by other employees, including when one employee told him "Potter said she was sabotaging my job." [Doc. 56, pg. 2]. This statement is hearsay within hearsay and does not fall under any of the hearsay exceptions. Regarding Green's alleged interference with McTaggart after he transferred, McTaggart stated in his deposition that he "was told [Green] had called two or three people" and told them to "keep an eye on him." [Doc. 56, pg. 2]. This is also inadmissible hearsay which does not fall under any exception. In sum, McTaggart lacks personal knowledge as to both of these allegations, and both are hearsay without an exception. For these reasons, Defendants' motion *in limine* [Doc. 56] to preclude McTaggart from testifying about these matters is GRANTED.

### III. CONCLUSION

For the reasons stated herein, McTaggart's motion *in limine* [Doc. 45] is **GRANTED** and his motion *in limine* [Doc. 46] is **DENIED**. Defendants' motions *in limine* [Docs. 48, 49, 53, and 56] are **GRANTED**. Defendants' motions *in limine* [Docs. 50, 51, 52, and 54] are **DENIED** and Defendants' remaining motions [Docs. 47 and 55] are **GRANTED** in part and **DENIED** in part. Finally, because the trial date was reset to January 18, 2022, McTaggart's motion for extension of time to respond to motions *in limine* [Doc. 57] is **DENIED** as moot.

SO ORDERED:

s/Clifton L. Corker  
United States District Judge